# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONHATAN JOIR MEDINA ALVARADO, | Case No. 1:26-cv-00112-JLT-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND RESCIND NO-TRANSFER ORDER |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends denying the petition and rescinding the no-transfer order.

## I.

## BACKGROUND

Petitioner is a noncitizen who has been in immigration detention since November 15, 2025. (ECF No. 1 at 2, 6.[1]) On January 8, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On January 15, 2026, the undersigned appointed counsel, stating:

> In the petition, Petitioner states that his family and loved ones depend on Petitioner for "basic needs like the rent, food and transport" and that his parents, who suffer from serious medical issues, depend on Petitioner for care. (ECF No. 1 at 6–7.) These allegations suggest that either Petitioner was previously released from immigration detention and was recently re-detained, or that Petitioner was recently detained after having lived in the United

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

> States for possibly many years. In light of these allegations, the Court finds that the interests of justice would be served by the appointment of counsel given the complexity of the legal issues involved.

(ECF No. 5 at 1–2.) On February 10, 2026, the undersigned issued a minute order, which stated:

> Pending the Court's decision on the petition, and unless and until the Court orders otherwise, the Court **ORDERS** that Respondents **shall not transfer Petitioner out of this District.** See F.T.C. v. Dean Foods Co., 384 U.S. 597, 604 (1966) (noting court's "express authority under the All Writs Act to issue such temporary injunctions as may be necessary to protect its own jurisdiction").

(ECF No. 11.) On February 19, 2026, Respondents filed a response, and Petitioner filed a reply on February 27, 2026. (ECF Nos. 12, 14.)

## II.

## DISCUSSION

In the petition, Petitioner asserts that his prolonged detention without a bond hearing violates due process.[2] (ECF No. 1 at 7–18.) In the response, Respondents state:

> Respondents respectfully ask the Court to rescind its February 10, 2026 order [and] dismiss the habeas petition because, on February 1, 2026, the Immigration Judge granted a joint motion from the petitioner and DHS for voluntary departure, in lieu of removal. Exhibits 1 and 2.1 The Immigration Judge gave the petitioner until March 2, 2026, to voluntarily depart the country. Exhibit 2. Both parties waived their right to appeal the Immigration Judge's order to the Board of Immigration Appeals. Id.
>
> The only obstacle to the effectuation of this voluntary removal order is this Court's February 10, 2026, which directs DHS not to transfer the petitioner out of the district unless and until the Court orders otherwise. Respondents respectfully ask the Court to rescind its February 10, 2026, and dismiss the habeas petition, so that DHS can facilitate the petitioner's voluntary departure to Colombia.

(ECF No. 12 at 2.) In the reply, Petitioner asserts that "the voluntary deportation documents are illegal on their face" and "the habeas petition should moot the voluntary departure order." (ECF No. 14 at 2, 3 (capitalization omitted).) Petitioner has submitted a declaration, which states in pertinent part:

---

[2] Petitioner has not filed an amended petition. Thus, this matter is proceeding on the petition filed by Petitioner *pro se* before the appointment of counsel.

[On] December 5th, 2015, the ICE agents came and told us to get in line to sign, they told us it was a motion to ask for voluntary departure, the other people asked what would happen if we didnt [sic] sign, they told us very clearly that we were going to be deported anyways. I wasnt [sic] provided any translation to Spanish of the documents I was being told to sign. I was very confused and didnt [sic] have the knowledge of any other forms to fight my case. Once back and more calm I was informed of the habeas corpus form, and I decided to file it on January 15th 2026, which has been approved. A day before on January 14th 2026, I had an immigration court where I informed my judge Katie Mullins, that I wanted to fight my case since I fear to return to my country of birth.

On February 2nd, ICE tried to take me back to the Fresno office to sign the voluntary departure but I refused. Then on February 4th the ICE agents came to my dorm, at the time they came I was in the restroom, my dorm officer came to call me, I acknowledged it and finished my business, I went to get my ID and went to the officer calling me. She was mad with me, when I refused to sign the document she got more frustrated and ordered a GEO officer to send me to the hole as punishment for not signing. I was scared and feared that I would suffer further harm if I didnt [sic] sign.

(ECF No. 14 at 4–5.)

**A.  Jurisdiction**

Section 1252(b)(9) is "a 'zipper clause' that consolidates all 'questions of law and fact ... arising from any action taken or proceeding brought to remove an alien' into a petition for review" in the court of appeals. Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(9)). "The 'arising from' language appears broad, but the Supreme Court has cautioned against an 'expansive' interpretation of § 1252(b)(9) that would lead to 'absurd' results and make certain claims 'effectively unreviewable.'" Ibarra-Perez v. United States, 154 F.4th 989, 1000 (9th Cir. 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 293 (2018)). Although it "might seem draconian at first glance," "importantly, § 1252(b)(9) has built-in limits." J.E.F.M. v. Lynch, 837 F.3d 1026, 1031, 1032 (9th Cir. 2016). "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." Id. at 1032. Thus, the Ninth Circuit has held that "an immigrant could challenge his . . . administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9)." J.E.F.M., 837 F.3d at 1032 (citing Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006)).

3

Here, the petition raises a prolonged detention claim. The Court has jurisdiction over such a claim.[3]

**B.  Immigration Detention Statutes and Bond Hearings**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in

---

[3] The Court recognizes there are grave concerns about whether Petitioner voluntarily signed the voluntary departure documents. However, that issue is not before this Court, and the Court's determination on the habeas petition presently before it makes no determination as to the merits of any challenge to Petitioner's motion for voluntary departure.

Zadvydas." Demore, 538 U.S. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that §§ 1225(b)(1), (b)(2), and 1226(c) "contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98, 304–305. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention

5

without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

There has been a dearth of guidance regarding the point at which an immigration detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens mandatorily detained, but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024).

**C. Prolonged Detention**

The Ninth Circuit has observed that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf II, 634 F.3d at 1092. The Supreme Court recognized six months as a presumptively reasonable period of detention in the removal period context. Zadvydas, 533 U.S. at 701. "Several circuit and district courts have found that unreasonably long detention periods with no allowance for a bond hearing may violate the due process clause," but "these cases involved detention periods substantially longer than 6 months." Quezada Haro v. Warden of Mesa Verde Det. Facility, No. 1:26-cv-00632-KES-SKO (HC), 2026 WL 221782, at *2 (E.D. Cal. Jan. 28, 2026). See Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018))). Here, Petitioner's detention period of

almost four months "is well within the 6-month presumptively reasonable period contemplated in Zadvydas and does not implicate those constitutional concerns." Quezada Haro, 2026 WL 221782, at *2. Accordingly, the undersigned recommends finding that Petitioner's four-month detention "does not qualify as unreasonably prolonged as to violate his Fifth Amendment due process rights." Id.

**III.**

**RECOMMENDATION**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the no-transfer order be rescinded.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 9, 2026**                    /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE