UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONHATAN JOIR MEDINA ALVARADO, <br><br> Petitioner, <br><br> v. <br><br> WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., <br><br> Respondents. | Case Nos. 1:26-cv-00112-JLT-EPG (HC) <br> 1:26-cv-02084-JLT-EPG (HC) <br><br> ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS, DENYING PETITION FOR WRIT OF HABEAS CORPUS, RESCINDING NO-TRANSFER ORDER, AND DIRECTING CLERK OF COURT TO CLOSE CASE <br><br> (Docs. 1, 11, 15) |

Jonhatan Joir Medina Alvarado is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On March 9, 2026, the assigned magistrate judge issued Findings and Recommendations to deny the petition and to rescind the no-transfer order. (Doc. 15.) The Court served the Findings and Recommendations on the parties and notified them that any objections were due within fourteen days. (*Id*. at 7.) The Court advised them that "failure to file objections within the specified time may waive the right to appeal the District Court's order." (*Id*. (citing *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).) On March 20, 2026, Petitioner filed timely objections. (Doc. 16.) Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court performed a *de novo* review of the case. Having carefully reviewed the matter, including Petitioner's objections, the Court concludes that the Findings and Recommendations are supported by the record and proper analysis, with one

1

exception.

The Findings and Recommendations indicate: "The Court recognizes there are grave concerns about whether Petitioner voluntarily signed the voluntary departure documents. However, that issue is not before this Court." (Doc. 15 at 4 n.3.) But that issue was raised by the parties in their briefing. As noted in Petitioner's objections (Doc. 16 at 2), Respondent's relied solely on voluntary departure in their response to the habeas petition, and Petitioner confined his reply to addressing that objection. (*See* Doc. 12 at 2; Doc. 14 at 2.) Petitioner argues that his acceptance of voluntary departure was done unknowingly, without a full understanding of his legal rights. (*See* Docs. 14, 16.)

Specifically, he argues that the "Addendum" dated December 5, 2025 submitted by the government—which purports to be Petitioner's declaration—is "unconstitutional on its[] face, and its[] application," (*see* Doc. 12-1 at 4–5), because it is boilerplate and waives an explanation of the allegations in Petitioner's own language[1], yet indicates that Petitioner agrees to the allegations as true. (Doc. 4 at 2.) Petitioner further argues that when he signed the joint stipulation for voluntary departure (*see* Doc. 12-1 at 3–5), he was not represented by counsel, was at a distinct disadvantage because of his detention, and was rushed into signing the document. (Doc. 14 at 2.) In a recent declaration dated February 12, 2026, Petitioner states that he signed the form without a full understanding of his rights and without adequate translation and was punished for refusing to sign additional paperwork related to his voluntary departure. (*See* Doc. 14 at 4–5.) Specifically, he states:

> [On] December 5th, 2025, the ICE agents came and told us to get in line to sign, they told us it was a motion to ask for voluntary departure, the other people asked what would happen if we didnt [sic] sign, they told us very clearly that we were going to be deported anyways. I wasnt [sic] provided any translation to Spanish of the documents I was being told to sign. I was very confused and didnt [sic] have the knowledge of any other forms to fight my case. Once back and more calm I was informed of the habeas corpus form, and I decided to file it on January 15th 2026, which has been approved. A day before on January 14th 2026, I had an immigration court where I informed my judge Katie Mullins, that I wanted to fight my case since I fear to return to my country of birth.
>
> On February 2nd, ICE tried to take me back to the Fresno office to sign the voluntary departure but I refused. Then on February 4th the ICE agents came to my dorm, at the time they came I was in the restroom, my dorm officer

---

[1] Despite Petitioner's allegations, Respondents indicate that Petitioner "was provided an oral interpretation/written translation of this Declaration in [his] preferred language of Spanish." (Doc. 12-1 at 5.)

> came to call me, I acknowledged it and finished my business, I went to get my ID and went to the officer calling me. <u>She was mad with me, when I refused to sign the document she got more frustrated and ordered a GEO officer to send me to the hole as punishment for not signing. I was scared and feared that I would suffer further harm if I didnt [sic] sign.</u>

(*Id*. (emphasis added).)

However, Petitioner fails to establish that this Court has jurisdiction to address these claims. Petitioner relies on two cases to argue otherwise. (Doc. 16 at 2); *Cruz Garcia v. Hermosillo*, No. 2:26-cv-00184-TMC, 2026 WL 183571, at *1, 2 (W.D. Wash. Jan. 23, 2026); *Cruz Uitz v. Noem, et al.*, No. CV-25-06420-MWF (AJRx), 2025 WL 2995008, at *1 (C.D. Cal. Sept. 23, 2025). Neither case establishes a clear basis for jurisdiction. First, *Cruz Garcia* involved a grant of a temporary restraining order in the habeas context which only temporarily barred the petitioner's removal pending an evidentiary hearing and further briefing on the preliminary injunction. *Cruz Garcia*, 2026 WL 183571, at *2. As to the voluntary departure claim, the court found that petitioner "ha[d] submitted sufficient evidence to raise serious questions that any document he signed authorizing his removal [was] unenforceable and [] obtained in violation of his Due Process rights." *Id*. at *2.

Notably, however, the court did not address the question of jurisdiction, *Cruz Garcia*, 2026 WL 183571, at *1, and eventually granted the habeas petition on other grounds. *See Cruz Garcia v. Hermosillo*, 2026 WL 232581, at *1–2 (finding that petitioner was not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but rather entitled to release on bond as a member of a certified Bond Denial Class under § 1226(a)). In the final order granting habeas relief, the court did not mention voluntary departure, nor did the government argue that petitioner's failure to voluntarily depart by the given deadline resulted in a final order of removal and that petitioner was now subject to mandatory detention under 8 U.S.C. § 1231.[2] *Id*.

Second, *Cruz Uitz* involved a motion for preliminary injunction for a petitioner who argued unknowing acceptance of voluntary departure but had already departed to Mexico. *Cruz Uitz*, 2025 WL

---

[2] The government in *Cruz Garcia* did "not dispute that [petitioner] [was] a member of the Bond Denial Class for purposes of this matter." *Cruz Garcia*, 2026 WL 232581, at *2. To be a member of such class, the individual must be a "noncitizen without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) <u>are not or will not be subject to detention under</u> 8 U.S.C. § 1226(c), § 1225(b)(1), or <u>§ 1231 at the time the noncitizen is scheduled for or requests a bond hearing</u>." *Id*. at *1 (emphasis added).

2995008, at *1–3. In addressing jurisdiction, the court explained that the jurisdictional bar found in 8 U.S.C. § 1252(g) did not apply because "the [c]ourt is neither asked to adjudicate [p]laintiff's eligibility for cancellation of removal nor is that what the [c]ourt would do in fashioning relief." *Id*. at *5. Instead, "[p]laintiff has not been through removal proceedings and there has been no order of removal. Plaintiff seeks injunctive relief that he be allowed to re-enter the United States and return to custody, so that he may *then* enter removal proceedings and *then* potentially seek cancellation of removal." *Id*. (emphasis in original).

Contrary to the cases above, there is a final order of removal at issue in this case. (*See* Doc. 20 at 2.) Respondents argue that Petitioner's failure to depart by the allotted voluntary departure deadline of March 2, 2026 resulted in a final order of removal under 8 C.F.R. § 1240.26, making him subject to mandatory detention under 8 U.S.C. § 1231(a)(2). (*See* Doc. 20 at 2.) Indeed, the record and applicable regulations support this conclusion. The Immigration Judge's order granting voluntary departure indicated that "if the [Petitioner] fails to depart as required, the above grant of pre-conclusion voluntary departure shall be withdrawn without further notice or proceedings and the following order, entered pursuant to 8 C.F.R. § 1240.26(d), shall become immediately effective." (Doc. 12-1 at 9.) That regulation indicates:

> (d) Alternate order of removal. Upon granting a request made for voluntary departure either prior to the completion of proceedings or at the conclusion of proceedings, the immigration judge shall also enter an alternate order of removal.

8 C.F.R. § 1240.26(d).

Based on the record before this Court, it appears that Petitioner's order of removal is now final. (*See* Docs. 22, 23.) Petitioner did not file an appeal to the Board of Immigration Appeals, did not withdraw his voluntary departure, and does not indicate that a motion to reopen or reconsider has been filed with the immigration system.[3] Even if Petitioner had filed a motion to reopen or reconsider, he

---

[3] Upon entering Petitioner's A-Number into EOIR's website, the automated case information indicates that no appeal to the BIA was received for this case. EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited April 23, 2026). The deadline to file any such appeal has now passed. *See* 8 C.F.R. § 1003.38(b). The IJ granted voluntary departure on February 1, 2026, and the alternate order of removal became effective on March 3, 2026. (*See* Doc. 12-1 at 9.) Because more than 30 days have passed since either the entry of the IJ's voluntary departure order, or the day the alternate order of removal

4

would still be subject to a final order of removal. As the Court best explained in *Ortega*:

> The regulation[] promulgated at 8 C.F.R. § 1240.26(b)(3)(iii) . . . provides that "[i]f the alien files a post-decision motion to reopen or reconsider during the period allowed for voluntary departure, the grant of voluntary departure shall be terminated automatically, and the alternate order of removal will take effect immediately." 8 C.F.R. § 1240.26. The Supreme Court explained this procedure in *Dada v. Mukasey*, 554 U.S. 1, 21 (2008):
>
> "We hold that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period, without regard to the underlying merits of the motion to reopen. As a result, the alien has the option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion.
>
> If the alien selects the latter option, he or she gives up the possibility of readmission and becomes subject to the IJ's alternative order of removal. *See* 8 C.F.R. s. 1240.26(d). The alien may be removed by the DHS within 90 days, even if the motion to reopen has yet to be adjudicated. *See* 8 U.S.C. s. 1231(a)(1)(A). But the alien may request a stay of the order of removal, and, though the BIA has discretion to deny the motion for a stay, it may constitute an abuse of discretion for the BIA to do so where the motion states nonfrivolous grounds for reopening."

*Ortega v. Warden of Golden State Annex ICE Detention Facility*, No. 1:25-cv-01856-DAD-CSK, 2026 WL 836323, at *1 (E.D. Cal. Mar. 25, 2026).

In *Ortega*, the petitioner similarly filed a habeas petition to invalidate his voluntary departure paperwork based on duress and coercion. *Id*. at *1. Although the petitioner there "withdrew his request for voluntary departure [] to reopen his immigration case," the Court still found he was subject to a final removal order and mandatory detention under 8 U.S.C. § 1231 and applicable regulations. *Id*. Similarly here, Petitioner is subject to a final order of removal under applicable regulations. *See* 8 C.F.R. § 1240.26(d). Petitioner's alternate order of removal took effect March 3, 2026, when Petitioner failed to

---

went into effect, that order is final. *See* 8 C.F.R. § 1241.1(c) (an order of removal becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

Though Petitioner's counsel initially indicated that Petitioner had "moved to withdraw" his request for voluntary departure with the immigration court, (Doc. 16 at 1), in a recent status update, Petitioner's counsel indicates that such "information . . . was incorrect." (Doc. 23 at 2.) Further, on April 16, 2026, the government submitted a supplemental declaration indicating that, upon review of internal DHS documents, "Petitioner has filed no further motions with the Immigration Court or the Board of Immigration Appeals since he received his Voluntary Departure Order on February 1, 2026. There have been no further hearings scheduled or held since February 1, 2026 and the case remains closed." (Doc. 22 at 3.)

voluntarily depart. (*See* Doc. 12-1 at 9.) The order became administratively final "[u]pon expiration of the time allotted for an appeal." *See* 8 C.F.R. § 1241.1(c). The deadline to file an appeal was on or around April 2, 2026, and the removal period began on that date. *See* 8 C.F.R. §1003.38(b); 8 U.S.C. § 1231(a)(1)(B)(i). Therefore, Petitioner is currently subject to mandatory detention during a 90-day removal period, as set forth in 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). *See Gregorio v. Warden*, No. 2:26-cv-00657-JLT-SKO, 2026 WL 810004, at *1–2 (E.D. Cal. Mar. 24, 2026) (denying habeas relief because the petitioner failed to appeal the IJ's grant of voluntary departure and subsequent final order of removal and was now subject to a final order of removal and mandatory detention). Since the 90-day period has not yet passed, the Court **DENIES** habeas relief.

Petitioner argues that "a district court can grant a petition for a writ of habeas corpus, which overrides an immigration court's order granting a request for voluntary departure," (Doc. 23 at 2), and that the habeas petition moots the voluntary departure order, (Doc. 14 at 3). Not so. As explained above, the cases cited by Petitioner (Doc. 16 at 2), do not establish a clear basis for jurisdiction. *Cf. Cruz Garcia*, 2026 WL 183571, at *1; *Cruz Uitz*, 2025 WL 2995008, at *5. The Immigration Nationality Act limits judicial review in matters which involve the executive's decision to "commence proceedings, adjudicate cases, <u>or execute removal orders against any alien</u>." 8 U.S.C. § 1252(g) (emphasis added). It is unclear how this Court has jurisdiction to decide the issue of involuntary acceptance when it would, in essence, require the Court to invalidate the removal order, which is otherwise prohibited under § 1252(g).

As this court explained in *Ortega*:

> In essence, petitioner contends that this court has the authority in habeas proceedings such as this one to vacate the immigration judge's removal order because that order was issued only due to petitioner being under duress. The cases which petitioner cites in support of this proposition do not address an immigration judge's entry of an alternate order of removal that had become effective under 8 C.F.R. § 1240.26, do not address detention under 8 U.S.C. § 1231, and do not involve the vacating of an immigration judge's removal order []. *See Cruz Garcia*, 2026 WL 183571, at *2) (determining that the petitioner's voluntary departure agreement was obtained under duress but not addressing an immigration judge's removal order based on that agreement); *see also Bonilla v. Bondi*, No. 2:26-cv-00757-NJC, 2026 WL 485283, at *3 (E.D.N.Y. Feb. 20, 2026) (same).
>
> <u>The Ninth Circuit has held that under 8 U.S.C. § 1252, the district court</u>

lacks jurisdiction to hear indirect challenges to a removal order. *Martinez v. Napolitano*, 704 F.3d 620, 622–23 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by [§] 1252(a)(5)."). Here, the relief petitioner seeks would necessarily require the court to find that the removal order issued in his case is invalid. This court lacks jurisdiction to enter that relief. *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010) ("If [the petitioner] obtains the relief he seeks, the order of removal entered by the IJ and affirmed by the BIA . . . would necessarily be flawed. . . . Accordingly, the district court properly dismissed [the petitioner's] complaint for lack of subject-matter jurisdiction.") (cited with approval by Martinez, 704 F.3d at 623).

*Ortega*, 2026 WL 836323, at *2 (emphasis added). Seeing as Petitioner's habeas claim here is an indirect challenge to a removal order, the Court **DENIES** habeas relief on this ground as well. *Id.*; *Martinez*, 704 F.3d at 622–23. Accordingly, the Court **ORDERS**:

1. The Findings and Recommendations issued on March 9, 2026 (Doc. 15) are **ADOPTED IN PART**.

2. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

3. The no-transfer order (Doc. 11) is **RESCINDED**.

4. The Clerk of Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:   **April 24, 2026**

_____
UNITED STATES DISTRICT JUDGE